HYMAN GALLIN, Plaintiff, *v.* POLO GROUNDS ATHLETIC CLUB, Defendant.

Municipal Court of New York, Borough of Manhattan, First District,
February, 1926.

Negligence — injuries to persons — section of ringside seats collapsed at world's championship prize fight — defendant liable for plaintiff's injuries where seats were not properly constructed — defendant could have anticipated strain to which seats would be subjected — defendant not relieved from liability by permits from municipal authorities and State Boxing Commission.

Defendant, a corporation which maintained, operated and controlled the grounds at which the Dempsey and Firpo world's heavyweight championship prize fight was held, is liable to the plaintiff for damages for personal injuries suffered by reason of the collapse of a section of the ringside seats during the fight, where it appears that said seats were neither properly placed nor constructed

so as to protect the public from the danger to which, from previous experience, it was reasonably to be anticipated they would be subjected.

The fact that the plan for seating the spectators conformed to the regulations of the building and fire departments of the city of New York, and that a permit to conduct the fight was issued by the State Boxing Commission, does not relieve the defendant from its obligation to protect said spectators from a danger which could have been anticipated.

ACTION by plaintiff to recover for personal injuries suffered when benches or seats provided by the defendant collapsed during a prize fight.

*Emil Weitzner* [*Benjamin H. Berman* of counsel], for the plaintiff.

*William Butler* [*Adolph F. Bruenner* of counsel], for the defendant.

MARKS, J.   The plaintiff paid twenty-two dollars, the prescribed admission fee, for a reserved ringside seat at a boxing contest for the world's heavyweight championship between one Dempsey and one Firpo at the Polo Grounds on the night of September 24, 1923. These grounds are laid out and used principally for baseball games. There is an amphitheatre there with rising tiers of seats arranged for individual use which prevents overcrowding.   This amphitheatre will accommodate about 35,000 people, and the seats used by them are made of wood and metal and rest on and are fastened securely to the concrete floor of the structure.

But for this Dempsey-Firpo exhibition the defendant, which maintained, operated and controlled the Polo Grounds on the night in question, decided to use also the ball field, and placed thereon a series of benches divided into sections to seat about 20,000 additional spectators, and also placed on the ball field seats to accommodate between 10,000 and 15,000 additional spectators, which seats were constructed out of plain boards supported on each end by another board.

The benches for the accommodation of the additional 20,000 spectators above referred to were constructed entirely of wood, the lumber of each bench being one and three-quarters inches thick, and the general length was thirteen feet four inches, and seated about nine persons.   The seat was constructed of two planks, one nine inches wide and the other four and one-half inches wide, the total width of the seat being thirteen and one-half inches. The seat and back of the bench were supported by wooden uprights resting on a base also made of wood two inches thick, four inches wide and eighteen inches long.   This base rested upon the turf and was not fastened to the ground, and in my opinion was intended principally to prevent the legs or uprights of the benches from bearing into and spoiling the turf of the baseball field, one of the

rules of the owners of the baseball club being that the turf should not be spoiled.   The bench was held together by nails.

The so-called ring in which the contest was fought was built on the ball field between the pitcher's box and second base, and the benches were arranged all around this ring in sections.

In the section in which the plaintiff's seat was located there were about 3,600 seats, divided into 400 of these wooden benches placed in about 100 rows.   The space between the back of one bench and the front of another bench was only about fourteen inches.   The bench on which the plaintiff was seated was about the twenty-fourth one from the ringside.

Mr. Rickard, under whose supervision this arena or ball field was used and who provided these temporary wooden benches, testified that he was one of the largest promoters of boxing exhibitions in the United States, having handled several of them; that this Dempsey-Firpo exhibition was a championship bout and that he knew from his former experience in giving such exhibitions that the spectators attended in the hope of seeing a " knockout " which, I assume, is a blow with his fist incased in a padded glove, designed to prevent injury, delivered by one of the contestants with such force and strength, however, to the body of his opponent as to render the recipient of this not over-gentle friendly tap unconscious or unfit to continue the contest.

Eagerly awaiting this knockout, when it occurs, as stated by Mr. Rickard, the crowd becomes very much excited and stand on the benches and break them; that he knew that even permanent benches had been broken by the crowd at another exhibition of the same kind; that the people at this Dempsey-Firpo exhibition went mad.

When Firpo hit Dempsey in the first round either knocking him out or almost knocking him out of the ring, the excitement and turmoil became so great that nearly everybody stood up shouting and yelling.   The entire gathering was in an uproar. Hundreds of people stood upon the seats of the benches and upon the backs of benches, with one foot on the back of one bench and the other foot on the back of another bench, pulling one another and shouting and yelling, while others ran down the aisles to the ringside.

The back of the bench on which plaintiff was seated was broken off and it went down.   The center of the bench broke and caved in, and the seat was splintered.   The plaintiff was thrown to the ground and people fell on top of him.   A friend of the plaintiff who sat with him on the same bench describes the scene as follows: " After a few knockdowns everybody was in a pitch of excitement,

but when Dempsey was knocked out of the ring the real commotion started and as well as I can remember now everybody was getting up on the benches and the next thing I knew we were pulled — the bench went over on us with us sitting on it, the other gentleman and myself, and we found ourselves in a heap and Mr. Gallin was very badly hurt and we picked him up." He further stated that at that time when the plaintiff's bench caved in " a couple of rows went down at that time and there was a big turmoil, benches in front of us and in back of us went down. They either went backwards and the benches were lying down, some were smashed and some were just thrown backwards and people fell over with them because people stood up on the seats of the benches and they were very close together. They made as much as they possibly could of the ground — and when one bench went down and went back on the people back of them the other bench went down."

The plaintiff sustained a fracture or dislocation of one of his fingers and abrasions and contusions to his face and shoulders. Plaintiff claimed that the cause of the accident was the use by the defendant of rotten lumber in making the benches, but this allegation he failed to prove. But he also claims that it was due to the failure of the defendant to use reasonable care in constructing said seats, and this charge in my opinion is supported by the evidence.

Judging from the vast multitude in attendance at this exhibition, about 70,000 or 80,000 people, a number greater than the combined population of several of the large cities in this State, and the prices charged for admission, the receipts may be safely estimated to have been $1,000,000.

If the interest of so large a part of the public in this fistic encounter was so great that the amphitheatre of the Polo Grounds and the wooden benches of the bleachers used to accommodate the public at baseball games were not considered sufficient to accommodate all who desired to attend, and provision was made by the defendant to invite for gain and to seat about 20,000 additional spectators by placing benches in the ball field, the defendant is liable for neglect for failing to construct and place those additional seats so that they would be safe for the purpose for which it knew the public not only intended to use them, namely, for seating purposes, but for which it knew or should have known they would be likely to be used at times of great excitement, namely, to stand upon the seats and the backs of these benches.

These seats placed on the ball field on this occasion had been used before at a similar exhibition and had been used for seating

Municipal Court of New York, February, 1926.     [Vol. 126

and standing purposes and were thus known to have been subjected to extraordinary weight, not improving their condition for a subsequent similar purpose.

The first consideration of the defendant should have been the safety of the public. When it threw open this ball field it impliedly warranted to the public that it was a safe place and that the seats provided were safe for the purpose not only for which they were intended, but for which they were likely to be used by the spectators. The plaintiff had a right to expect when he paid his admission fee that the defendant would furnish him with a safe seat to witness the performance.

The danger of the seats breaking from the strain and weight and rough usage to which they might be subjected on this occasion by the spectators was known to the defendant and should have been anticipated and guarded against.

These benches may have been adapted for an open air concert or other orderly public gathering; but with the experience of Mr. Rickard, the promoter of the exhibition, in such matters, and his knowledge of the rough usage to which they had been put, and his knowledge of the conduct of a large crowd at such an exhibition when a knockout occurs, the defendant was charged with an affirmative positive obligation to know that these arena or field seats were not safe for the purpose and use to which they would be put, and was charged with the duty to guard against the danger of injury to the public by their use.

Consideration for the safety of the public should have induced the defendant to limit the seats to the permanent wood and metal and securely fastened seats in the amphitheatre and the well-constructed bleachers used at baseball games; but if the ball field was used, the same consideration required, regardless of the trouble and expense necessary to do so, that these benches should be constructed of strong material and fastened so that they would withstand the rough usage to which it was known they would likely be subjected, and not topple over and break under conditions prevailing at such an exhibition.

It was shown on the trial that the plan for seating the spectators conformed to the regulations of the building and fire departments, and the arena or ball field was inspected by those departments, and before the exhibition could be held these departments and the Boxing Commission had to issue and did issue permits to hold the exhibition. But such inspection and permission does not relieve the defendant from its positive obligation and duty to the public to protect them from a known danger and one which could and should have been anticipated from its knowledge that this

kind of benches had been broken and were likely to break again under the use to which they were put by the crowd.

Notwithstanding the care claimed by the defendant to have been exercised in the construction of these benches and the inspection of the seating arrangements by various city departments and the permits given so that the exhibition might be held, and notwithstanding the attendance of many hundreds of police officers, special police officers, firemen and ushers on the night of the exhibition, I still find that Mr. Rickard representing the defendant failed to act as a reasonably prudent man should have acted, and that knowing how the public used these benches at such exhibitions he should have foreseen the necessity of removing the risk of injury to the public from this cause.   And I find further as a fact that these benches were not properly constructed or sufficiently strong and were not properly placed or fastened, which I deem part of construction, to protect spectators from the danger which from previous experience it was reasonably to be anticipated they would be subjected to by an uncontrollable, excited crowd during times of intense excitement, restlessness and uproarious demonstration.

The plaintiff is awarded the sum of $500 for his injuries and suffering, and $36 for his doctor's bill, total $536.   Ten days' stay of execution.